### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BONNIE J. STROMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )   Case No.     CIV-05-1306-M |
| JO ANNE B. BARNHART, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

# FINDINGS & RECOMMENDATION
# OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final

decision of the Commissioner of the Social Security Administration denying her application for

disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423 of the Act.  This matter has

been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C.

§636(b)(1)(B), and for the reasons stated herein, it is recommended that the Commissioner's

decision be **AFFIRMED**.

### PROCEDURAL HISTORY

Plaintiff filed her application for DIB on January 17, 2001 alleging a disability since June 28,

1999 (TR. 63-68). The application was denied on initial consideration and on reconsideration at the

administrative level (TR. 39, 40).  Pursuant to the Plaintiff's request, a hearing *de novo* was held

before an administrative law judge (ALJ) on January 15, 2002 (TR. 330-357). The Plaintiff appeared

in person and with her attorney and offered her testimony in support of the application (TR. 333-

352).  A vocational expert (VE) testified at the request of the ALJ (TR. 352-355). The ALJ issued her

decision on July 26, 2002 finding that Plaintiff was not entitled to DIB (TR. 218-228). The Appeals

Council granted Plaintiff's request for review and by order dated July 11, 2003 vacated the ALJ's

decision and remanded the case to an ALJ for further proceedings (TR. 230-232). A supplemental

hearing was held before a different ALJ on January 25, 2005 at which the Plaintiff again appeared

in person and with her attorney and offered her testimony in support of the application (TR. 363-

380).  A vocational expert (VE) testified at the request of the ALJ (TR. 380-384). The ALJ issued his

decision on March 23, 2005 finding that Plaintiff was not entitled to DIB (TR. 22-31).  The Appeals

Council denied the Plaintiff's request for review on September 10, 2005, and thus, the decision of

the ALJ became the final decision of the Commissioner (TR. 11-13).

## STANDARD OF REVIEW

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by
> substantial evidence. *(citations omitted)*. Substantial evidence is
> "more than a mere scintilla. It means such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> *(citations omitted)*. In evaluating the appeal, we neither reweigh the
> evidence nor substitute our judgment for that of the agency.
> *(citations omitted)*. We examine the record as a whole, including
> whatever in the record fairly detracts from the weight of the
> Secretary's decision and, on that basis, determine if the substantiality
> of the evidence test has been met. *(citations omitted)*. If, however,
> the correct legal test in weighing the evidence has not been applied,
> these limitations do not apply, and such failure constitutes grounds
> for reversal. *(citations omitted)*.

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be

found only where there is a conspicuous absence of credible choices or no contrary medical

evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) *(citations omitted)*.

## DISCUSSION & FINDINGS

In addressing the Plaintiff's disability application the ALJ followed the five-step sequential

evaluation process set forth in 20 C.F.R. §404.1520.  At step one, the ALJ found that the Plaintiff

had not engaged in substantial gainful activity for the relevant period so the process continued (TR.

30).  At step two, the ALJ concluded that the Plaintiff's lumbar and cervical degenerative joint

disease was a severe impairment (TR. 30).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments which meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 30). At step four, the ALJ found that Plaintiff lacked the residual functional capacity (RFC) to perform her past relevant work (PRW) (TR. 31).

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  The ALJ found that Plaintiff had the RFC to perform light work that required no more than occasional stooping (TR. 31).  By applying the medical vocational guidelines as a framework for decision making and by considering the testimony of a VE the ALJ determined that the Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB (TR. 31).

On appeal to this Court, Plaintiff alleges that (I) the ALJ erred by formulating an RFC assessment which failed to include all of Plaintiff's limitations; and (II) the ALJ erred in his assessment of Plaintiff's credibility.

**Medical Evidence**

In June 1999 Plaintiff was examined by her treating physician, Stephen Gilliland, M.D., who reported that she had reduced range of motion in her lumbar spine; that she had localized tenderness to firm palpation in the left low lumbar area and extending into the left sciatic notch; and that she had positive straight leg raising on the left (TR. 107). Dr. Gilliland's diagnosis was of lumbar strain with left sciatica (TR. 107).  His treatment plan called for physical therapy and required that she not yet return to driving; that she return to work but avoid lifting more than 10 pounds or pulling or pushing with more than 20 pounds of force; and that she not bend at the waist or do any squatting or kneeling (TR. 107, 108).  Dr. Gilliland also reported that x-rays of the lumbar

spine revealed no acute abnormalities, but did show degenerative disk disease and osteoarthritis at L5-S1 (TR. 108).

In September 1999 Plaintiff was examined by her treating physician, Gaylan D. Yates, M.D., who in the context of a "Worker's Compensation Consultation Report" stated that an MRI scan showed a slight disk desiccation and possibly an annular tear posteriorly at L4-5; and that there was significant loss of disk height with a left paracentral disk herniation or protrusion encroaching the left S1 nerve root (TR. 119).   Dr. Yates described Plaintiff's back exam as unremarkable to inspection and palpation except for some tenderness in the left SI notch; and further described Plaintiff as having good flexion and extension, although extension caused pain (TR. 119).  Dr. Yates further found that Plaintiff could stand on her heels and toes without weakness; that she had negative straight leg raising bilaterally; and that there was some gross L5 or S1 dermatomal sensory loss (TR. 119).  As to her prognosis Dr. Yates stated that

> There is a slight chance with a little more time that she will show significant improvement in her back; however, I am pessimistic that she will be able to return to work and successfully go back to her heavy duty activity. If she had a relatively sedentary job, then I am sure that we could improve her well enough that further treatment would not be necessary

(TR. 120).

In January 2000 Plaintiff was examined by Nathan E. Bradley, M.D., (orthopedic surgeon), who reported that Plaintiff had some mild tenderness in her back with very mild limitation of motion; and that her straight leg raising was negative (TR. 124).  Dr. Bradley allowed her to return to work on January 24, 2000 at light duty with no lifting over 20 pounds (TR. 124).

In February 2000 Plaintiff was examined by Lance Rosson, D.O., (family practice) who found that Plaintiff had pain and spasms of the paravertebral muscles as well as pain in the lumbosacral region bilaterally; that she had limited range of motion of her spine with positive straight leg raising; and that she exhibited a normal gait on a flat surface (TR. 131). Dr. Rosson's

medical opinion was that there was evidence of persistent discogenic injury, chronic musculoligamentous injury with residual neurosensory injury affecting her left lower extremity (TR. 131).   Accordingly, Dr. Rosson opined in a worker's compensation context that Plaintiff had sustained a permanent partial impairment of 28% to the whole person as a result of her back injury (TR. 131-132).

In October 2000 Plaintiff was examined by Chris Codding, M.D. (orthopedic surgeon), who reported that Plaintiff had no inflammation of her joints; that her grip strength was decreased bilaterally; and that she had mild tenderness and decreased external rotation of her right shoulder (TR. 145). Dr. Codding also found that Plaintiff had full range of motion of her cervical spine with mild spasm bilaterally; and that she had mild bilateral tenderness of her lumbar spine (TR. 145). Dr. Codding stated that Plaintiff's problems were "from her upper extremities" in that she had carpal tunnel bilaterally; and that she had "features suggesting cervical disk disease" (TR. 245).   In January 2001 Dr. Codding reported that Plaintiff had a severe trigger point on her left trapezius with decreased motion of her neck (TR. 143).   Dr. Codding diagnosed Plaintiff as having cervical osteoarthritis with facet osteoarthritis and severe spasm (TR. 143).

In March 2001, a physical RFC assessment was completed by agency physicians in which they concluded that Plaintiff was able to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, and sit, stand and/or walk for a total of about six hours in an eight hour workday (TR. 152). Agency physicians also concluded that Plaintiff could only occasionally stoop, but that Plaintiff had no other exertional, postural, manipulative, visual, communicative, or environmental limitations (TR. 153-159).

### Hearing Testimony

Plaintiff testified that "most days" she experienced pain in her lower back and left leg which at times caused her leg to become numb and prevented her from sitting or standing for more than thirty minutes at a time (TR. 371-372).   She also testified that she could not perform more than

thirty minutes of physical activity without resting for at least fifteen minutes thereafter (TR. 372-373).  Plaintiff also testified that most days she had neck pain which prevented her from doing overhead work; that she had difficulty buttoning buttons, using a pen, and lifting a gallon of milk with one hand (374-375).  She testified that during the relevant period she cooked meals, did laundry, vacuumed and cleaned the house, although these chores took more time to complete (TR. 377).  She testified that she could walk only two blocks; and that she could only drive short distances (TR. 378).

# I.

Plaintiff urges on appeal that the ALJ erred by formulating an RFC assessment which failed to include all of Plaintiff's limitations.  Plaintiff argues that the ALJ erred by not adopting the limitations described by Dr. Gilliland in his June 1999 opinion (TR. 107, 108) (See Plaintiff's Brief at pages 7-8).  Plaintiff also argues that the ALJ erred in not adopting the opinion of Dr. Yates that he was "pessimistic" that Plaintiff would be able to return to work (TR. 120) (See Plaintiff's Brief at pages 8-9).

In *Goatcher v. United States Dep't of Health & Human Services*, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. § 404.1527(d)(2)-(6). If an ALJ disregards a treating physician's opinion, he must set forth "specific, legitimate reasons" for doing so.  *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

In his decision the ALJ provided a extraordinarily detailed and thorough review of the medical evidence (TR. 25-29).  As to Dr. Gilliland, his opinion that Plaintiff should "avoid lifting more than 10 pounds or pulling or pushing with more than 20 pounds of force" was considered by the ALJ but rejected in favor of the later opinions of two of Plaintiff's other treating physicians: Cory D. Nagode, M.D., who released Plaintiff to return to work without restriction; and Dr. Bradley who released Plaintiff to return to "light duty" work with no lifting over 20 pounds (TR. 107, 171, 124, 25, 26).

Plaintiff counsel blatantly mischaracterizes Dr. Yates opinion by stating that he was "pessimistic that she will be able to return to work" unless she "had a relatively sedentary job" (See Plaintiff's Brief at pages 8-9).  Dr. Yates did state that... "I am pessimistic that she will be able to return to work and successfully go back to her heavy duty activity" (TR. 120).  Plaintiff's counsel should be mindful that such conduct may result in sanctions (See Fed.R.Civ.P. 11 and LCvR83.6).

Thus, for the reasons discussed above, it appears that the ALJ properly considered the opinions of Plaintiff's physicians, Dr. Gilliland and Dr. Yates; and it further appears that the ALJ formulated an RFC assessment which included all of Plaintiff's physical limitations.

## II.

Plaintiff argues on appeal that the ALJ erred in his assessment of Plaintiff's credibility (See Plaintiff's Brief at pages 12-14). The legal standards for evaluating pain and credibility are outlined in 20 C.F.R. §§ 404.1529(c), 416.929 and SSR 96-7p, and were addressed by the Tenth Circuit Court of Appeals in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). First, the asserted pain-producing impairment must be supported by objective medical evidence. *Id.* At 163. Second, assuming all the allegations of pain as true, a claimant must establish a nexus between the impairment and the alleged pain.  "The impairment or abnormality must be one which `could reasonably be expected to produce' the alleged pain."  *Id.*  Third, the decision maker, considering all of the medical data

presented and any objective or subjective indications of the pain, must assess the claimant's credibility.

> [I]f an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence.

*Id.* at 164.  In assessing the credibility of a claimant's complaints of pain, the following factors may be considered.

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991).   *See also Luna*, 834 F.2d at 165 ("The Secretary has also noted several factors for consideration including the claimant's daily activities, and the dosage, effectiveness, and side effects of medication.").

In *Kepler v. Chater*, 68 F.3d 387, (10th Cir. 1995), the Tenth Circuit determined that an ALJ must discuss a Plaintiff's complaints of pain, in accordance with *Luna*, and provide the reasoning which supports the decision as opposed to mere conclusions.  *Id.* at 390-91.

> Though the ALJ listed some of these [Luna] factors, he did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.

*Id.* at 391. *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.  *Id* at 1372.

In the present case the ALJ reached step three of the *Luna* analysis and in assessing the credibility of the Plaintiff followed the dictates of *Kepler* by providing an thorough and meaningful discussion of the evidence which linked specific evidence to his findings (TR. 27-28).

In accordance with *Luna* and *Kepler,* the ALJ determined that the medical evidence did not support the degree of limitation claimed by Plaintiff.  The absence of an objective medical basis for the degree of severity of pain may affect the weight given to subjective allegations of pain. *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993); *See Luna*, at 165 (10th Cir. 1987). Further, Although Plaintiff complained of pain, none of Plaintiff's doctors provided explicit confirmation of the existence of disabling pain and this absence of confirmation detracted from Plaintiff's credibility.  *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Huston v. Bowen*, 838 F.2d 1131, 1129 (10th Cir. 1988).

An ALJ's determination of credibility is given great deference by the reviewing court.  *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495 (10th Cir. 1992).  On appeal, the court's role is to verify whether substantial evidence in the record supports the ALJ's decision, and not to substitute the court's judgment for that of the ALJ. *Kepler* at 391; (Credibility determinations are peculiarly within the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence); *Musgrave*, 966 F.2d 1371, 1374.

Thus, it appears from the record that the ALJ's credibility determination was supported by substantial evidence and should not be disturbed on appeal.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and should be **AFFIRMED**.  The parties are advised of their right to object to these findings and recommendation within twenty (20) days of the date of the filing hereof, in accordance with 28 U.S.C. §636 and LCvR72.1(a). The parties are further advised that failure to make timely objection to these findings and recommendation waives their right to appeal from a judgment of the district

court based upon these findings and recommendation. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

The foregoing Findings and Recommendation disposes of all issues referred to the undersigned magistrate judge in the above captioned matter.

ENTERED on October 23, 2006.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE